## ST. LOUIS & S. F. R. CO. *et al.* v. FITZMARTIN.

No. 2765.    Opinion Filed November 18, 1913.

(136 Pac. 764.)

1.    MASTER AND SERVANT—Refusal to Give Service Letter—Damages Recoverable.  Where plaintiff, a freight train conductor, at the time he was discharged from such service of defendant for failure to prevent, by watching, the burglary of a car in his charge, has passed the age limit at and after which employment is not obtainable with most railroad companies; where, within three weeks thereafter, in response to plaintiff's request to be reinstated with pay for all time lost, defendant offers to reinstate him without such pay, and renews such offer nearly three months after such discharge; where plaintiff declines such offer, and makes no proof of effort to find employment which his age would not prevent, or where there is a vacancy, and only made one application for employment before demanding, more than eight months after his discharge, a service letter showing cause of said discharge (under section 4056, Comp. Laws 1909 [Rev. Laws 1910, sec. 3775]), and another application a few days before he commenced this action, which was about a month after demanding such letter;

where a service letter, in conformity with contract antedating enactment of said section 4056, supra, and omitting statement of cause of his discharge, is by defendant issued to plaintiff immediately after such discharge, which letter plaintiff retains, and, until said demand under said section 4056, supra, without objection thereto; where defendant, without oppression, fraud, or malice, refuses to give such second letter; and where there is no evidence that such second letter would have been of actual value or benefit to plaintiff—not more than nominal damages, if any, could be recovered by plaintiff against defendant because of such refusal.

2. **SAME—Right to Service Letter.** Where a discharged employee of a railroad company immediately after discharge receives, and, without objection thereto, retains for more than eight months a service letter, in conformity with his contract with the company, whereupon he demands another service letter, conforming to the provisions of the statute cited in the preceding paragraph, and the company offers to comply with his demand upon condition that he first surrender the contract letter, which he refuses to do, but offers to surrender it upon condition that the statutory letter be first given him, defendant may rightfully refuse to issue such statutory letter.

3. **SAME—Contract—Statute.** Neither the contract nor the statute, to which reference is made in the foregoing paragraph, contemplates that a discharged conductor shall, at the same time, be entitled to have more than one service letter on account of a single discharge.

(Syllabus by Thacker, C.)

*Error from Superior Court, Oklahoma County;*
*A. N. Munden, Judge.*

Action by Thomas Fitzmartin against the St. Louis & San Francisco Railroad Company, a corporation, and H. F. Clark. Judgment for plaintiff, and defendants brings error.   Reversed.

*W. F. Evans* and *R. A. Kleinschmidt,* for plaintiff in error.

*W. D. Cardwell, Stringer & McQueen,* and *Jno. C. Wall,* for defendant in error.

Opinion by THACKER, C.   Plaintiff in error will be designated as defendant, and defendant in error will be designated as plaintiff, in accord with their respective titles in the trial court.

Plaintiff, upon the verdict of a jury, recovered judgment in the trial court for the sum of $10,000 as damages for the alleged unlawful, wrongful, willful, and malicious failure and

refusal of the defendant, after demand by him made upon it, to give him what is known as a service letter, stating the cause for which it had discharged him from its service as its freight train conductor, and otherwise complying with the requirements of the Act of April 24, 1908 (Laws 1907-08, c. 53, art. 3), which is section 4056, Comp. Laws 1909 (Rev. Laws 1910, sec. 3775).

Plaintiff was such conductor on defendant's railroad from April 30, 1907, to October 27, 1908, inclusive.

During about 90 days prior to September 22, 1908, burglary (referred to as "robbery" throughout the record) of unwatched freight cars in transit on its road between Sherman, Tex., and Sapulpa, Okla., was of frequent occurrence; and on said date a bulletin was issued by M. A. Gossette, its trainmaster, notifying its conductors, including the plaintiff, that they, and their brakemen, would be held responsible and dismissed for any such burglaries thereafter occurring, the notice reciting, as reason therefor, that no reasonable excuse could be seen for such burglaries if trains were properly watched.

On October 19, 1908, defendant's car No. 120,927, in its train No. 529, in charge of plaintiff as conductor, was burglarized while in transit and not watched between the stations mentioned, and on October 27, 1908, the aforesaid trainmaster, by letter of that date, informed plaintiff that he was "taken out of service" for "allowing" said car No. 120,927 to be burglarized.

It appears from the evidence that "negligently failing to prevent" is meant by the word "allowing" as used in the last aforesaid letter, and that there was no intent to charge plaintiff with more than this.

A few days later plaintiff received, and thenceforth retained (without objection until July 10, 1909), a service letter in words and figures as follows:

"St. Louis & San Francisco Railroad Company. Certificate No. 362. Impression copy to be taken in book kept for that purpose. Francis, Okla., Nov. 2, 1908. This is to certify: That Thomas Fitzmartin has been employed in the capacity of brakeman and conductor at Francis, Okla., on the Red River Division from April 10, 1907, to October 27, 1908. Reasons for leav-

ing service, discharged. Promoted to freight conductor April 30th, 1907. Age 41; weight 160; height 5 ft. 5 in.; complexion light; hair auburn; eyes blue. George Geiger, Superintendent.

"No letters will be issued to employes leaving the service except on this form. They must be signed by head of department personally. W. C. Nixon, Vice Pres. and Gen'l. Mgr."

Plaintiff had misrepresented his age in his applications to defendant for employment; and the foregoing letter, following his own statement, stated the same about five years younger than he was. At the time of his discharge plaintiff was a member of O. R. C. (Order of Railway Conductors), with immediate membership in local order No. 53 at Denison, Tex., where he resided; and he was in the service of defendant under the conductors' and brakemen's schedule of June 1, 1907, the same being a contract (known generally as "Trainmen's Schedule") between conductors and brakemen, entered into by them through their respective orders, and the defendant, which contain the provisions following:

"Article 24. Any trainman leaving the service of this company after employment of thirty days or more, will, at his request, be given a letter by his superintendent, stating his term of service, capacity in which employed, and whether he is leaving the service of his own accord or has been discharged."

"Article 26. Conductors and brakemen will not be discharged, suspended or given demerit marks without just and sufficient cause. Before inflicting punishment in form of dismissal or suspension, trainmaster or superintendent will hold investigation if requested by employee involved, except in cases of head-end collision or drunkenness. If investigation is deemed necessary they may be present, together with a disinterested employee of their choice. All decisions will be rendered within fifteen days when practicable. In case of dismissal, suspension or demerit marks, if any conductor or brakeman thinks sentence unjust, he shall have the right within ten days to refer his case by written statement to his superintendent. Within ten days of receipt of this notice the case shall have a thorough investigation by proper officers of the company, at which investigation he may be present if he so desires, and also be represented by any disinterested employees of his choice. In case he is dissatisfied with result of investigation, he shall have the

right of appeal to the general officers. In case punishment is inflicted and subsequently found to be unjust, he shall be reinstated and paid at regular rates for all time lost."

Soon after being discharged plaintiff, through his said local order No. 53, procured E. L. Hill, who was chairman of the grievance committee of· the Sapulpa Division of the Order of Railway Conductors,, to apply to defendant's division superintendent, Geo. Geiger, for reinstatement and pay at regular rates for all lost time; and Superintendent Geiger, within three weeks after plaintiff was discharged, proposed to reinstate him without pay for lost time, but plaintiff declined that proposition. About and not later than January 18, 1909, C. H. Hasel, chairman of the general grievance committee of the Order of Railway Conductors, with Local Chairman Hill and plaintiff both present, took this matter of reinstatement with pay for all time lost, up in conference with J. E. Hutchinson, defendant's general superintendent, at Springfield, Mo.; but, after conference, this official declined to do more, and formally offered to reinstate plaintiff without pay for time lost. During the conference in this regard with Superintendent Hutchinson, plaintiff made a statement, as to the burglary .mentioned and as to a prior burglary of a car in a train in his charge between the aforesaid stations, which convinced Chairman Hill that he had been wrong in his former view that plaintiff was entitled to pay for lost time; and, at the time of that conference, both Chairman Hasel and Chairman Hill thought plaintiff guilty of negligence in failing to prevent the burglary for which he was discharged; and thenceforth recommended his acceptance of the proposition of reinstatement without pay for lost time. Plaintiff appealed from this action of Chairman Hasel to the full general grievance committee of the Order of Railway Conductors, but subsequently dismissed the appeal, and this committee approved Mr. Hasel's report of his action.

On July 10, 1909, plaintiff, for the first time, made demand of defendant for a service letter as follows:

"Denison, Texas., July 10, 1909.   Mr. J. F. Hickey, Ass't. Sup't. St. L. & S. F. R. R. Co., Francis, Oklahoma—Dear Sir:   About Oct. 27th, 1908, I was discharged from the serv-

ice of your company, and on Nov. 2d. same year, Mr. Geo. Geiger, then superintendent, undertook to give me a service letter which is neither satisfactory to me, nor does it conform to the laws of the state of Oklahoma, and in addition to this, it absolutely precludes my seeking employment elsewhere. I will therefore thank you to at once provide me with a service letter in compliance with the Oklahoma Statutes, under the title "Service Letters" and the act approved April 18th, 1908, of the Oklahoma Legislature; and to aid you in an exact compliance with this request and this law, I am enclosing you a sheet of white paper, upon which the service letter can be prepared as is required by such act. Trusting that I will receive this service letter at the earliest possible date consistent with the duties of your office, I am, Very truly, Thos. Fitzmartin. 512 W. Day St., Denison, Texas."

Mr. Hickey referred this letter from plaintiff to defendant's division superintendent, Mr. H. F. Clark; and the latter answered same as follows:

"St. Louis & San Francisco Railroad Company. Sapulpa, Oklahoma, July 17, 1909. Mr. Thomas Fitzmartin, 512 West Day Street, Denison, Texas—Dear Sir: Your letter of July 10th in regard to service letter. Please be kind enough to return to me the original service letter issued to you by Mr. Geiger, at which time we will furnish you with a service letter compiled in line with the present Oklahoma law. Yours truly, H. F. Clark, Superintendent."

Plaintiff answered the last foregoing letter as follows:

"Denison, Tex. Station, July 19, 1909. Mr. H. F. Clark, Supt., Sapulpa, Oklahoma—Dear Sir: Have received your reply to my request for service letter. Please send to me the service letter in compliance with the present Oklahoma law and I will then return to you the one given to me by Supt. Geiger. Yours truly, Thos. Fitzmartin, 512 W. Day St."

On August 8, 1909, defendant answered the last preceding letter as follows:

"Service Letter, Former Conductor Fitzmartin. Sapulpa, August 8, 1909. Mr. Thomas Fitzmartin, 512 West Day St., Denison, Texas—Dear Sir: Your favor of the 19th: If you will call on me personally I will be glad to give you another service letter written on any piece of paper which you will present. Yours truly, Superintendent."

There is no evidence whatever against defendant of oppression, fraud, or malice, nor of actual damage to plaintiff resulting from refusal of his demand of statutory service letter, and, if plaintiff could recover any amount whatever in this action, he would be limited to merely nominal damages (see *Ft. S. & W. Ry. Co. v. Ford,* 34 Okla. 575, 126 Pac. 745, 41 L. R. A. [N. S.] 745); but, as will hereinafter appear, there is an insuperable legal obstacle to his recovery of even nominal damages. It appears from his own testimony that at the time of his discharge, the plaintiff had passed the age limit at and after which "most" railroad companies would not employ. Plaintiff not only declined reinstatement in his former position as an employee of defendant without apparent cause, other than its refusal to pay him for the short time lost, but has, since his discharge, made little effort to secure employment from other railroads, and had made none to secure same from any other source before he commenced this action. After his discharge and during the same fall he applied to the Houston & Texas Central Railway Company, through a yardmaster or roadmaster who was his personal friend and had previously seen the letters given him by defendant, but it does not appear that this yardmaster or roadmaster was authorized to employ; that the question of service letter was in any manner mentioned; that his age would not have prevented his employment by that company; nor whether that company had any position open which he desired or could have filled. In August, 1909, and before commencing this action, he applied to the trainmaster of the Missouri, Oklahoma & Gulf Railway Company at Muskogee, Okla., getting the information in response that there was nothing for him; and, although he did not exhibit his service letter, he told said trainmaster he had one and what its contents were. It appears the trainmaster was a proper person to whom such application might be made; but it does not appear that there was a vacancy, nor that his age would not have prevented his employment, and it does not appear that the form or character of his service letter in any way affected the question. About a month before the trial of this case in September, 1910, he

applied to the roadmaster of the Texas & Pacific Railway Company at Dallas, Tex., and afterward to the American Express Company for a job and failed to get it; but no service letter was exhibited, and it appears that no question in that regard arose; the cause of his failure to secure a job being undisclosed. Up to the time of the trial of this action, nearly two years after the discharge, it appears he had made no effort, further than stated above, to secure employment, except he went to the Midland Valley Railroad Company, and failing to see the trainmaster, informed his personal friend, a man named Dean, who, according to his designation was a conductor, but who, according to the otherwise uncontradicted evidence for defendant, had not been in the service since plaintiff's said discharge, and who does not appear to have had any authority in that regard, that he, the plaintiff, desired a position with that road; and this man Dean promised an effort in his behalf, which is the end of the evidence in that regard.

It does not in any manner appear that plaintiff was ever refused employment for want of a service letter showing that he was discharged because of his failure to prevent the burglary of car No. 120,927, or otherwise complying with the provisions of section 4056, *supra;* and it nowhere appears that a service letter, merely stating that plaintiff was discharged, would militate against his ability to obtain employment from another railroad company by reason of any agreement or understanding in that regard between such companies; but, to the contrary, there is an overwhelming amount of uncontradicted evidence to the effect that a letter merely showing the fact of discharge has no peculiar meaning or significance whatever, and is not less valuable to the bearer than a letter showing discharge for such cause as existed in this case. It appears that in all cases of giving employment by railway companies the employee is first taken upon probation pending an investigation of his past record; and this is true no matter what the form and character of his service letter may be, as well as in cases where he has no letter.

In the absence of extraneous evidence throwing light upon the comparative values of such letters, it would seem reasonable to infer that a letter omitting to state such cause of discharge would be the more valuable to the bearer because of the fact that he would have an opportunity to minimize the effect of such cause by stating the facts as fully and favorably as the truth would permit in his favor, and so ingratiate himself, by faithful and efficient service, into the favor of his new employer' pending the latter's investigation of his record, that a subsequently obtained, less favorable or more derogatory statement of the cause of his discharge, made by his former employer, would not result in a loss of his new position; but, of course, if there was any understanding between railroad companies by which such letters had a peculiar meaning or significance, and thereby prevented or tended to prevent, employment of the bearer, or if through malice, or other improper motive, those of whom the new employer inquired would give exaggerated or false derogatory information as to the cause of discharge, a service letter specifically stating the cause thereof, issued at the time of discharge, might tend to prevent the giving or minimize the effect of such exaggerated or false information, and be preferable and more valuable to the discharged employee; but, under the evidence in this case, no fact or inference whatever appears in support of the view that a letter showing the cause of discharge would be the more valuable.

When the cause of discharge is derogatory to the person discharged, as when it is purely economic or is clearly wrongful, we are able to believe that such letter may be helpful in securing probative employment; but it is inconceivable that such a letter as conformity to the statute would have required in this case could have had any value, above the value of the letter given plaintiff, as long as it does not appear either that there was any understanding between railroad companies, any derogatory information actually given, any probative employment secured, or anything whatever to give the letter given a lesser value than the letter demanded would have had.

Although a much larger number of witnesses, apparently far better qualified in point of knowledge to give testimony in this regard, including many railroad officials and Chairman Hasel and Hill of the Order of Railway Conductors, testified for defendant to the contrary, witnesses for the plaintiff testified that an applicant for employment, with a service letter showing that he had been discharged and not specifying the cause therefor, could not get employment with another railroad company, but, at best, this appears to have been merely opinion evidence, based upon no disclosed facts within their own knowledge which support such opinion; and these witnesses for plaintiff in every instance gave further testimony, almost, if not quite, destroying any possible probative value in their prior statement that an employee with such a letter could not get employment; and we assume they did not mean to say that one having a service letter giving a serious wrong, such as dishonesty or other serious deficiency, as the cause of discharge would have any better chance to secure employment than one having a letter merely showing "discharged," although the testimony for plaintiff does not discriminate in this regard. Allowing every proper presumption, and indulging every reasonable inference from the testimony in favor of plaintiff upon this point, it appears, when the evidence of plaintiff is considered as a whole, that these witnesses had, without actual knowledge of the cause of failure to get employment in certain, and, so far as was specified, very few, instances, erroneously concluded from the bare fact of failure in these instances, and notwithstanding success in others, that applicant for employment with such a letter was at so great a disadvantage if his service letter merely stated that he was discharged that they were justified in testifying that he could not get employment. As an instance illustrating a lack of value in the testimony for plaintiff that such letters precluded the bearer from securing employment, one of the witnesses, so testifying most strongly on direct examination, admitted on cross-examination, touching the only instance of failure to get employment he specified, that he was employed notwithstanding he presented such a letter, and was retained pending investigation of the references given in his written application for the job, after which

he· was rejected—evidently because of answers to private in-
quiries which we cannot assume to have been more derogatory
than a true statement of the cause of discharge—and it ap-
pears from the testimony given, both for plaintiff and defend-
ant, when the same is considered as a whole and its apparently
conflicting parts are harmonized, which may be done by harmon-
izing the apparent conflicts in the several parts of the evidence
for plaintiff, that applicants in search of employment in vacant
positions, with or without service letters, and regardless of lack
of statement of cause of discharge when they have such letters,
if they make the impression of being reliable and capable upon
the mind of the employing officer, are taken on probation pend-
ing investigation of their past record, which investigation is al-
ways made, and are retained if they sustain the good impression
thus made and their past record is found to disclose no fact
preventing their retention.   Whatever may be the real facts
as to the treatment given bearers of letters showing merely that
they have been discharged, granting for the sake of argument
that it may be true that the company and its superintendent issu-
ing such discharge may, in response to inquiries from the com-
pany to 'which it is presented, and who has taken the bearer on
probation, by private letter make statements more derogatory
to him as to the cause of his discharge than they would do if
they had previously given him a letter showing the cause, it
must be conceded, we think, that the evidence in this case
does not justify such imputation against the defendant or any
one representing it.   Indeed, it does not appear that plaintiff's
record with defendant was ever investigated by any other com-
pany, and the very few persons, in several instances his personal
friends, to whom he applied for employment with other com-
panies apparently had only his own statement, if that, as to the
cause of his discharge.

Assuming; without deciding, that the provision of the con-
tract between these parties relating to service letters (article 24,
*supra*) was entirely for the benefit of plaintiff, and gave him an
optional right to a certain form of letter without so much as by
implication limiting his right to that particular form of letter

as against the subsequently enacted statute, and that he could waive that right, and assert a right under the statutory provision in that regard without the assent of the defendant—*i. e.,* that the contract was not necessarily the exclusive measure of the rights and duties of the parties as to service letters as against this statute—we are of the opinion that neither the statute nor the contract contemplated that a discharged employee should be entitled to have more than one service letter at the same time on account of a single discharge.

In view of the undisputed evidence to the effect that there is a demand for service letters, resulting in their forgery. in some instances and in untrustworthy persons falsely assuming the name of the persons given genuine letters in other instances, defendant's demand of plaintiff, in response to the latter's demand for a statutory form of letter, that the service letter issued to plaintiff on November 2, 1908, under the contract or trainmen's schedule, should be returned to it as a condition precedent to the issuance of a letter under the Act of April 24, 1908, appears reasonable and just; and defendant's rule forbidding the issuance of a second letter until the prior letter has been surrendered, in deference to which such demand was made of plaintiff, seems to be subject to no fair or reasonable adverse criticism.

The fact that the statute imposes a penalty upon a railroad company for willfully or negligently· failing or refusing the letter thereby required, and none upon the demandant for failing or refusing to surrender another and different letter theretofore received and retained by him, as well as the fact that the lesser danger of possible harm would seem to require that the contract letter should be surrendered before the issuance of the statutory letter should be required, emphasize the reasonableness of defendant's refusal to issue the statutory letter. Assuming, without deciding, that plaintiff has not waived his rights to afterwards demand and receive a statutory letter by accepting and, for more than eight months, without objection, retaining the contract letter that was issued to him immediately after his discharge, we are of the opinion that, upon defendant's demand

therefor, plaintiff was bound to surrender the first issued letter as a condition precedent to his absolute and unconditional right to the statutory letter demanded by him on July 10, 1909. The statute by its terms takes no account of pre-existing contracts; we cannot assume it was thereby intended, if it was constitutionally possible, to supplement plaintiff's contract by giving a right to an additional letter—it seems more reasonable to say that it contemplated the issuance of only one letter to a discharged employee, and that an employee holding a different form of letter, which he had accepted under a contract entered into before the enactment of the statute, is not, while he holds such letter, in position to rightfully demand a letter in the statutory form.

Among the numerous questions presented upon the errors assigned, it is urged by defendant that the Act of April 24, 1908, is violative of the "due process" and "equal protection" clauses of the fourteenth amendment and the provision against "any law impairing the obligations of contracts" in the federal Constitution, as well as of the "due process," "obligation of contracts," and "liberty of speech" provisions of the state Constitution, and it is also urged that, if the statute be held valid, it gives no right to civil damages for failure to comply with its provisions, in view of the absence of such right at common law; but it is unnecessary to determine any of these questions in this case.

However, as tending to show that the statute is not unconstitutional, we direct attention to the cases of *St. Louis Southwestern Ry. Co. of Texas v. Hixon* (Tex. Civ. App.) 126 S. W. 338, and *St. Louis Southwestern Ry. Co. of Texas v. Griffin* (Tex. Civ. App.) 154 S. W. 583, and, as tending to show that a private action for civil damages for breach of duty imposed by the statute can be maintained, we direct attention to cases cited in and editorial conclusion of notes to *Wolf v. Smith,* page 338, and *Leathers v. B. D. T. Co.,* page 349, in 9 L. R. A. (N. S.)

For the reasons stated, the judgment of the trial court should be reversed.

By the Court: It is so ordered.